# Exhibit A



# Notice of Service of Process

null / ALL
**Transmittal Number: 24861642**
**Date Processed: 05/03/2022**

| | |
|---|---|
| Primary Contact: | Quinessa Malcolm<br>The Home Depot, Inc.<br>2455 Paces Ferry Rd SE<br>Atlanta, GA 30339-1834 |
| Electronic copy provided to: | Cathy Copeland<br>Adriane Towns |

| | |
|---|---|
| Entity: | Home Depot U.S.A., Inc.<br>Entity ID Number  2483807 |
| Entity Served: | Home Depot U.S.A., Inc. |
| Title of Action: | Webb, Louis H. vs. Home Depot U.S.A., Inc. |
| Matter Name/ID: | Webb, Louis H. vs. Home Depot U.S.A., Inc. (12054760) |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Discrimination |
| Court/Agency: | San Diego County Superior Court, CA |
| Case/Reference No: | 37-2022-00016029-CU-WT-CTL |
| Jurisdiction Served: | California |
| Date Served on CSC: | 05/02/2022 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Mackaness & Ideta, LLP<br>619-359-8700 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| |
|---|
| **FOR COURT USE ONLY** *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

HOME DEPOT U.S.A., INC., a Delaware Corporation; and DOES 1-10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

LOUIS H. WEBB, an individual

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/29/2022** at 01:13:14 PM

Clerk of the Superior Court
By Emily Schilawski,Deputy Clerk

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Diego Superior Court, Hall of Justice

330 West Broadway
San Diego, CA 92101

| CASE NUMBER: |
|---|
| 37-2022-00016029-CU-WT-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Erik M. Ideta, 3702 4th Ave, San Diego, CA 92103, Tel. 619-359-8700

DATE: 05/02/2022
*(Fecha)*

Clerk, by _____ E. Schilawski _____, Deputy
*(Secretario)*      *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* Home Depot U.S.A., Inc., a Delaware corporation

under: [X] CCP 416.10 (corporation)       [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)      [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Erik M. Ideta (SBN 259533)
eideta@mackdeta.com
Jessica L. Mackaness (SBN 272805)
jmackaness@mackdeta.com
MACKANESS & IDETA, LLP
3702 4th Ave.
San Diego, CA 92103
Telephone:  (619) 359-8700
Facsimile:  (619) 359-8719

*Attorneys for Plaintiff*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/29/2022** at 01:13:14 PM

Clerk of the Superior Court
By Emily Schilawski,Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

| | |
|---|---|
| LOUIS H. WEBB, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC., a Delaware Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 37-2022-00018029-CU-WT-CTL<br><br>**COMPLAINT FOR:**<br><br>1. **Failure to Pay Overtime Compensation;**<br>2. **Failure to Pay Meal Periods;**<br>3. **Failure to Pay Rest Breaks;**<br>4. **Failure to Pay Wages Upon Separation of Employment;**<br>5. **Failure to Provide Accurate, Itemized Wage Statements;**<br>6. **Unfair Businesses Practices in Violation of Cal. Bus. & Prof. Code § 17200,** *et seq.*<br>7. **Age Discrimination in Violation of Cal. Gov't Code § 12940,** *et seq.;*<br>8. **Failure to Engage in Interactive Process in Violation Cal. Gov't Code § 12940,** *et. seq.;*<br>9. **Disability Discrimination in Violation of Cal. Gov't Code § 12940,** *et seq.;*<br>10. **Failure to Prevent Discrimination in Violation of Cal. Gov't Code § 12940,** *et. seq.;*<br>11. **Intentional Infliction of Emotional Distress;**<br>12. **Wrongful Termination in Violation of Government Code § 12940,** *et seq.;* **and**<br>13. **Wrongful Termination in Violation of Public Policy**<br><br>DEMAND FOR JURY TRIAL<br><br>[UNLIMITED JURISDICTION] |

MACKANESS & IDETA, LLP
3702 4TH AVE.
SAN DIEGO, CA 92103

TO THE COURT AND ALL INTERESTED PARTIES:

Plaintiff LOUIS H. WEBB, an individual ("Plaintiff"), by and through his attorneys, Mackaness & Ideta, LLP, hereby complains and alleges, upon information and belief except as otherwise specifically stated, against HOME DEPOT U.S.A., INC., a Delaware Corporation, and DOES 1-10, inclusive, as follows:

## PARTIES

*Plaintiff*

1.       Plaintiff LOUIS H. WEBB ("Plaintiff") is, and at all relevant times was, an individual over the age of 18 residing in San Diego, California.

*Defendants*

2.       Defendant HOME DEPOT U.S.A., INC. ("Defendant" or "Home Depot") is a Delaware corporation registered to do business in California, with its headquarters in Cobb County, Georgia.  Defendant is the largest home improvement retailer in the United States.  As of March 2022, the company has 1,994 stores across the United States.  California has the most Home Depot locations of any state, with 234 stores.

3.       Defendant DOES 1-10 are business entities and/or individuals whose true names, identities, and relationships are not yet known to Plaintiff.  Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the matters and damages alleged herein, and that their actions were authorized by, ratified by, and known to the named Defendant.  Plaintiff will amend this Complaint, or request leave to do so if required, if and when the identities of the fictitiously named Defendants become known.

4.       At all relevant times hereto, each Defendant, including each of the DOE Defendants, were the alter egos, agents, partners, joint ventures, joint employers, employees, representatives, servants, successors-in-interest, co-conspirators, and assigns, each of the other, and at all times relevant hereto were acting within the course and scope of their authority as such.  All acts or omissions alleged herein were committed with the ratification, knowledge, permission, consent, encouragement, and authorization of each Defendant designated herein.  Defendants are, therefore, jointly and severally liable to Plaintiff for the damages alleged herein.

MACKANESS & IDETA, LLP
3703 4ᵗʰ AVE.
SAN DIEGO, CA 92103

MACKANESS & IDETA, LLP
3702 4th AVE.
SAN DIEGO, CA 92103

## SUMMARY AND NATURE OF THE ACTION

5.     This case arises out of Defendant's improper misclassification of Plaintiff as an exempt employee, its unlawful discrimination of Plaintiff based on his age and disability, and ultimately, its wrongful termination of Plaintiff's employment, including its wrongful withholding of Plaintiff's hard-earned wages upon that termination.

6.     As described in more detail below, Plaintiff, a 55-year-old, Type-1 diabetic man with nearly 30 years of retail experience, was first hired by Home Depot in June 2005 as an assistant store manager.  At the time of his hiring, Plaintiff was told that his position would be a salaried, exempt position, and that he should expect to work a "flexible" 55 hours per week.

7.     And that is exactly what Plaintiff did, and more, throughout his sixteen and a half-year-career with Home Depot.  Indeed, Plaintiff would routinely work 10 to 12-hour days and 55 to 60-hour weeks, all without overtime compensation.  Nor would Plaintiff rarely, if ever, take full, uninterrupted meal breaks and rest periods.  This lasted throughout his entire employment, up until his wrongful termination on January 24, 2022.

8.     Plaintiff consistently received positive annual reviews from his employer designating him as a "Valued Associate" who was well-positioned within the company.  In fact, some years, Plaintiff was deemed a "Top Performer." Due to his business acumen, presentation skills, and ability to deliver results, Plaintiff boasted one of the longest tenures of any Home Depot assistant store manager in San Diego County.

9.     Plaintiff's venerable tenure with Home Depot also made him one of the company's highest paid assistant managers in San Diego.  At the time of his termination, Plaintiff was earning over $115,000 per year in salary and bonuses.  Defendant's supervisor, Denise Blanchard, realizing Home Depot could pay younger associates far less on an hourly basis to do Plaintiff's job, embarked upon an illegitimate and discriminatory campaign to write Plaintiff up for any alleged "misconduct" she could muster up, selectively enforcing Home Depot's policies against him and not his co-workers, all contrary to Home Depot's prior course of conduct.  Ms. Blanchard then used those pretextual write-ups to unceremoniously and abruptly end Plaintiff's employment on January 24,

1   2022—one month before bonuses were to be issued and Plaintiff's restricted stock grants were set

2   to vest.

3           10.     In reality, Defendant's write-ups of Plaintiff were pure pretext, designed to establish

4   a seemingly "legitimate" basis to terminate an older, disabled employee who had simply become

5   too expensive for his position, particularly during the COVID-19 pandemic. Defendant's conduct

6   is in blatant violation of California' Fair Employment and Housing Act ("FEHA"), Government

7   Code section 12940, *et seq.*, which prohibits any form of adverse employment action based on an

8   employee's age or disability.

9           11.     If Defendant's discrimination were not egregious enough, Defendant added insult

10   to injury by refusing to pay Plaintiff his final wages on the day of his termination, as required by

11   California Labor Code sections 201 and 203. When Defendant did receive his final paycheck two

12   days later, he was shorted more than 67 hours' worth of vacation pay in further violation of Labor

13   Code sections 201 and 227.3. Despite multiple requests for an explanation as to his vacation hours,

14   Defendant refuses to provide Plaintiff with an explanation as to why 67 hours of vacation pay were

15   withheld, and refuses to pay Plaintiff the rest of these wages.

16           12.     As a result of Defendant's conduct, Plaintiff has suffered damages, including actual,

17   consequential, and incidental financial losses, emotional distress, attorney's fees, and costs in an

18   amount according to proof. In addition, Defendant's actions were oppressive and malicious,

19   thereby justifying an award of punitive damages in an amount according to proof.

20   **JURISDICTION AND VENUE**

21           13.     This Court retains general jurisdiction over each named Defendant who is a resident

22   of California. Further, this Court has specific jurisdiction over each named non-resident Defendant

23   because these Defendants maintain sufficient minimum contacts with California as to render

24   jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

25   Defendants purposefully availed themselves of the benefits of conducting business within the State

26   of California. Exercising jurisdiction over any nonresident Defendant is reasonable under these

27   and other circumstances as alleged herein.

28

MACKANESS & IDETA, LLP
3702 4ᵗʰ AVE.
SAN DIEGO, CA 92103

- 4 -
COMPLAINT

14.     Venue is proper in this Court pursuant to California Code of Civil Procedure section 395 because a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this county, and Defendants have received substantial compensation in this county by doing business here and engaging in numerous activities that had an effect in this county.

## FACTUAL ALLEGATIONS

*Plaintiff's Tenure with Home Depot*

15.     Plaintiff Louis "Lou" Webb is a 55-year-old man residing in San Diego, California. A 30-year veteran of the retail industry, Plaintiff was hired by Home Depot on June 27, 2005, as an Assistant Store Manager ("ASM").  Since being hired by Home Depot in 2005, Plaintiff has worked at numerous different Home Depot locations throughout San Diego County, under several store managers, and has successfully held all but one of the company's various ASM roles.  For the last 5 years, Plaintiff was employed at Home Depot's East Escondido, California store (Store 1053).

16.     At all times during his employment, Plaintiff was classified as a salaried employee exempt from overtime pay and other related benefits.  Indeed, when Plaintiff was first hired by Home Depot in 2005, he was told that he should expect to work a "flexible" 55-hour work week.

17.     Although Plaintiff is a Type-1 diabetic, he has overcome his disability through hard-work, perseverance, a positive attitude, and a passion for Defendant's business.  In fact, Plaintiff's positive performance evaluations over the years led to multiple salary increases and bonuses, such that by the time of his wrongful termination on January 24, 2022, Plaintiff was earning in excess of $115,000 per year.  As an additional employee benefit, Plaintiff also received restricted stock grants in the company, which were coincidentally (or not) set to vest at the end of February 2022, one month before Plaintiff was wrongfully terminated.

18.     As was the expectation when Plaintiff was hired, throughout his entire employment, Plaintiff consistently and regularly worked more than eight (8) hours per day and in excess of forty (40) hours per week.  In fact, Plaintiff routinely worked in excess of 12 hours per day, resulting in 60-plus hour workweeks.  Aside from taking sick days and paid vacation, Plaintiff can recall fewer

MACKANESS & IDETA, LLP
3702 4ᴛʰ AVE.
SAN DIEGO, CA 92103

- 5 -
COMPLAINT

1  than five occasions throughout his entire employment on which he worked only a straight 8-hour

2  shift.

3     19.    Moreover, Plaintiff regularly worked more than five (5) hours in a given day without

4  a lawful meal period and, on occasion, over 10 hours in a day without a second lawful meal period

5  as required by law.   Due to Defendant's scheduling practices and policies, work demands, and

6  failure to provide adequate coverage, Plaintiff was routinely deprived of 30-minute meal breaks,

7  which were either not provided at all, or were untimely, interrupted, or short.

8     20.    Similarly, Plaintiff rarely took one net 10-minute paid, rest period for each four-

9  hour work period, or major fraction thereof.  When Plaintiff was able to take a rest period, it was

10  short, interrupted, and Plaintiff was required to remain on premises in violation of Labor Code

11  sections 226.7 and 1198, and the applicable IWC Wage Orders.

12  ***Defendant Is Misclassified as a Salaried Exempt Employee, Particularly After Home Depot***

13  ***Installs a New Store Manager Who Begins Stripping Him of Managerial Duties.***

14     21.    From approximately June 2017 through approximately February 2020, Plaintiff held

15  the position of Operations ASM.  Despite holding a management title, Plaintiff spent the majority

16  of his workday primarily engaged in the core, day-to-day business activities of Home Depot, which

17  included, among other tasks: cleaning the store, preparing the store for openings and closings,

18  operating the service desk, assisting customers with tool and equipment rentals, operating cash

19  registers, assisting customers throughout the store, cutting keys for customers, mixing paint for

20  customers, greeting customers at the door, handling trash, and even collecting shopping carts from

21  the parking lot.  In fact, with the exception of operating a forklift (which requires a specific license),

22  Plaintiff routinely performed every single task that his hourly co-workers performed throughout

23  their workday.

24     22.    In or about September 2019, Defendant installed a new store manager, Denise

25  Blanchard, at the East Escondido store where Plaintiff was working.  Immediately upon her arrival

26  at Plaintiff's branch, Plaintiff felt Ms. Blanchard, who is significantly younger than Plaintiff, was

27  treating him differently.

28

MACKANESS & IDETA, LLP
3702 4ᵗʰ AVE.
SAN DIEGO, CA 92103

MACKANESS & IDETA, LLP
3702 4TH AVE.
SAN DIEGO, CA  92103

23.     Upon her arrival, Ms. Blanchard began changing the nature of Plaintiff's role, stripping away from him many of the managerial duties he had under his previous supervisor. Specifically, once Ms. Blanchard was installed, she prevented Plaintiff from exercising meaningful discretion or authority over what work was to be done by other store employees, how, or in what timeframe.  Plaintiff held only a minor role in adjusting work assignments upon arrival to work in the morning (and, often times, staffing decisions he made were quickly vetoed by Ms. Blanchard). Additionally, after Ms. Blanchard became store manager, Plaintiff was no longer permitted to participate in scheduling the work hours of any employee (as he had in the past).  Further, Plaintiff never had a distinct role in training employees, disciplining employees, or otherwise managing employees.

24.     Although Plaintiff was permitted to conduct new employee interviews and make hiring recommendations under his prior supervisor, under Ms. Blanchard, Plaintiff was no longer permitted to interview candidates (even for his own department), and his recommendations concerning the promotion and pay raises of other employees were given little to no weight (as they had in the past).

25.     At no time did Plaintiff have the authority to hire, fire, or promote employees absent the express authorization and approval of the store manager.  Nor did Plaintiff have any ability to determine employees' rates of pay, bonuses, raises, or other benefits, whether in accordance with company guidelines or not.  Plaintiff did not exercise independent authority or judgment over employment-related, personnel decisions.  And, once Ms. Blanchard took over management of the store, Plaintiff stopped being consulted on any of these matters.

26.     Thus, although holding the designation of a "manager," at all times, and particularly after Ms. Blanchard was installed as store manager in September 2019, Plaintiff primarily engaged in the type of work that required no exercise of independent judgment or discretion as to any matter of significance.  Due to the absence of managerial duties or authority, Plaintiff should have been properly classified as a non-exempt employee.

27.     Finally, in February 2020, Ms. Blanchard demoted Plaintiff from Operations ASM to Merchandising ASM, a less prestigious position with even fewer managerial duties.  When

- 7 -

MACKANESS & IDETA, LLP
3902 4ᵗʰ AVE.
SAN DIEGO, CA 92103

Plaintiff asked whether this was a demotion, Home Depot's District Human Resources Representative and Ms. Blanchard responded to Plaintiff that this decision was not tied in any way to Plaintiff's performance, but rather, they just wanted to "give someone else a chance."[1]  The employee who replaced Plaintiff as Operations ASM was less than half Plaintiff's age, with nowhere near Plaintiff's experience or knowledge of the company's operations and procedures.

28.     After Plaintiff was removed as Operations ASM, Ms. Blanchard stopped scheduling Plaintiff to work on days in which Home Depot's regional managers and upper-level management were scheduled to visit the store, and excluded Plaintiff from even the preparation for these visits. This was the first time during Plaintiff's employment with Home Depot that he was asked not to participate in the preparation for these upper-level management visits.

29.     Moreover, as a matter of store practice, small celebrations are held for ASMs on the date of their work anniversaries.  During the two years Plaintiff worked under Ms. Blanchard, Ms. Blanchard never so much as congratulated Plaintiff on his work anniversary, let alone throw him any sort of a celebration, as she did for all the other ASMs.

30.     Based on the demotion from Operations ASM and Ms. Blanchard's other conduct that signaled to Plaintiff that Ms. Blanchard was, in fact, attempting to edge Plaintiff out of Home Depot entirely, Plaintiff requested a store transfer.  Not surprisingly, the request was denied.

***Ms. Blanchard Fails to Engage in the Interactive Process with Plaintiff.***

31.     As a Type-1 diabetic, Plaintiff must maintain normal blood sugar levels throughout his day through constant monitoring and insulin injections.  Often times, however, Plaintiff would be required to consume a quick snack, such as an apple, on the store floor to address an unexpected drop in his blood sugar level.  This allowed Plaintiff to control his diabetes without interrupting his work or leaving the store floor unstaffed.

32.     Despite being aware of Plaintiff's disability, at no time did Ms. Blanchard or anyone else on Defendant's behalf engage in a good faith, interactive process to provide Plaintiff with a

---

[1] Indeed, the fact that Plaintiff was performing as expected during this time period is corroborated by Plaintiff's 2020 Individual Compensation Review Summary, which states that he was meeting company expectations and was deserving of his bonuses and stock grants for 2020.

- 8 -
COMPLAINT

1 reasonable accommodation related to his disability. In fact, Ms. Blanchard, unlike Plaintiff's prior

2 supervisors, refused to allow Plaintiff to have any food on the store floor. Thus, Plaintiff generally

3 was forced to leave the store floor for these unanticipated, but medically necessary, snacks, thereby

4 leaving a gap in coverage, particularly during the COVID-19 pandemic when there was already a

5 staffing shortage. Although Plaintiff was entitled to have Home Depot engage in a good faith,

6 interactive process with him to determine a reasonable accommodation related to his diabetes, on

7 information and belief, Ms. Blanchard instead viewed Plaintiff's disability as a nuisance.

8 ***Ms. Blanchard Begins Disparately Treating Plaintiff as Part of a Campaign to Terminate Him.***

9     33.     Further, after being installed as store manager, Ms. Blanchard began targeting

10 Plaintiff by disparately and unequally enforcing policies against him that she did not enforce against

11 Plaintiff's co-workers, including other assistant store managers.

12     34.     On the evening of Saturday, October 16, 2021, Plaintiff was informed by a garden

13 associate that a pallet of Roundup was leaking. At this time, Ms. Blanchard was on sick leave for

14 COVID-19, and staffing at Plaintiff's store had been impacted by COVID-19, leaving Plaintiff the

15 only manager or supervisor on duty. (Typically, an ASM would have two to three supervisors to

16 assist in safely running the store.) Thus, from approximately 1:30 p.m. until close that day, Plaintiff

17 was the only member of the management team on duty, covering multiple departments by himself.

18 Plaintiff was also scheduled to be the opening manager the following morning, at 6:45 a.m.

19     35.     As a home improvement store, Home Depot sells products that are considered to be,

20 or to contain, hazardous materials ("hazmats"). Because hazmats could pose a risk to health,

21 property, or the environment, Home Depot has policies and procedures for assessing the risk level

22 associated with a hazmat, and for isolating, treating, cleaning (processing) hazmats in their stores.

23 Pursuant to company policy, Home Depot has three levels of hazmat: (1) Black – Ignitable, which

24 is the highest-level hazmat and most critical; (2) Red – Toxic or reactive, which is the middle level

25 hazmat and considered less critical than an ignitable hazmat; and (3) Yellow – Non-regulated/state

26 regulated, which is the lowest level hazmat and the least critical.

27     36.     In California Home Depot stores, Roundup is a "Yellow" level hazmat with a "Non-

28 Hazardous Waste" designation. This is the same designation held by concrete, which is never even

MACKANESS & IDETA, LLP
3702 4ᵗʰ AVE.
SAN DIEGO, CA 92103

COMPLAINT

MACKANESS & IDETA, LLP
3702 1st Ave.
San Diego, CA 92103

processed as a hazmat as a matter of company policy, but rather, when exposed, is simply placed outside (often in large, open barrels) to be collected. Also, on information and belief, California is the only state to designate Roundup as a hazmat at all.

37.     On October 16, 2021, upon learning of Roundup leak, Plaintiff immediately had the leaking pallet moved to the receiving department and isolated away from customers and associates, to ensure neither would be exposed to it. Plaintiff also made sure there was no Roundup on the floor where the leak occurred. Since the store was short-staffed and customers were waiting to be assisted, Plaintiff then went to assist customers at the front end of the store. After assisting the customers, Plaintiff headed back to the receiving department to inspect the Roundup pallet again and assess the amount of time that it would take to process the hazmat. However, on the way to receiving, Plaintiff was informed by a garden associate that a group of shoplifters had entered the store. Since there was no asset protection working that evening, Plaintiff directed the associate to customer service and Plaintiff stood watch at the front door. This, along with covering multiple departments, occupied the next couple of hours.

38.     At this point, Plaintiff's blood sugar level was beginning to drop. Plaintiff quickly arranged to have food delivered and then went to assist customers in hardware. When Plaintiff's food arrived, Plaintiff went to the front desk and quickly consumed bites of food in between helping customers. By this time, it was approximately 8:30 p.m.

39.     After this, Plaintiff went back to receiving and reassessed the Roundup to confirm that it was still isolated and secured away from customers and associates. Having confirmed the Roundup was isolated and contained, and since the store floor needed coverage, Plaintiff decided to continue assisting on the floor, handle closing, and process the hazmat first thing in the morning upon his early arrival. Indeed, to isolate a "Yellow" hazmat in this manner and process it at a later time was standard practice across numerous store locations. Plaintiff handled the Roundup leak in a reasonable manner consistent with how ASMs generally would handle such spills under similar circumstances, based on company practice and his 16 and a half years of experience.[2]

---

[2] It is worth noting that Plaintiff's store had a reputation for positive hazmat compliance. Under

40.     First thing the next morning, Plaintiff processed the hazmat, which, as Plaintiff anticipated, took hours.

41.     Despite this, nearly *one month later*, on November 9, 2021, Plaintiff was given a "final" written disciplinary action notice based on what Ms. Blanchard falsely designated a "major safety violation."

42.     *Later that same day*, as Plaintiff was closing the store, he discovered an unprocessed cart of hazmats, *including an unprocessed container of gasoline*, that had been left for at least 24 hours by *two* separate ASMs—first, by the Operations ASM who had replaced Plaintiff and who was the closing manager on November 8, 2021, and then by the ASM in charge of opening the store on November 9, 2021.

43.     Gasoline is one of the most hazardous materials Home Depot handles and, as such, is a "Black" level hazmat—the most dangerous and critical. Accordingly, Plaintiff took a picture, quickly began processing the hazmat, and informed Ms. Blanchard of the occurrence. This caused Plaintiff to work well into the morning of November 10, 2021.

44.     Later, on November 10, 2021, Ms. Blanchard texted all the ASMs at the store with a picture of the gasoline hazmat that Plaintiff had sent her, stating, "This is what I am talking about; you can't leave hazmats," or words to that effect. Thus, Ms. Blanchard openly acknowledged that the Operations ASM and other ASM had failed to process a dangerous hazmat.

45.     Nevertheless, unlike Plaintiff, who had received a "final" written disciplinary action notice even though he processed a "Yellow" level hazmat in accordance with standard practice, on information and belief, neither of these two ASMs were disciplined *at all* for their *actual* safety violation, *i.e.*, failing to process a "Black" level hazmat. Based on this disparate treatment, it is evident Ms. Blanchard was seeking to orchestrate grounds to terminate Plaintiff.

---

Plaintiff's prior supervisor, Plaintiff had worked closely for approximately a 6-month period with Todd Walsh, the Environmental Health Specialist with the San Diego County Department of Environmental Health's Hazardous Materials Division, who confirmed Plaintiff's store was a "model retailer" for hazmat compliance (and whose son ultimately ended up working at the store, and still does to this day).

COMPLAINT

MACKANESS & IDETA, LLP
3702 4TH AVE.
SAN DIEGO, CA 92103

46.     Shortly after this incident, on Monday, November 29, 2021, Plaintiff took a week-long leave of absence to attend to his terminally ill mother in Florida.  Plaintiff returned to work on or about Monday, December 6, but had to leave again from December 21 through December 25, 2021, because his mother had sadly passed away.  Plaintiff had the required vacation days to cover these absences, which were all approved by management.  Plaintiff returned to work on December 26, 2021.

47.     Before his December 21 departure, during the week of December 13, Ms. Blanchard questioned Plaintiff on the whereabouts of the equipment safety checklist for December 9, 2021, a day in which Plaintiff happened to be the opening manager.  The equipment safety checklist is a written checklist used to prepare the overall daily Store Readiness Checklist.  While the equipment safety checklist is typically kept in the store's receiving department, the Store Readiness Checklist gets completed each morning by the opening manager and is submitted electronically in Home Depot's system.

48.     On December 9, 2021, the Store Readiness Checklist had been timely submitted electronically.  However, Plaintiff learned through his investigations, spurred by Ms. Blanchard's questioning of him, that the hardcopy of the equipment safety checklist for December 9 had gone missing along with the clipboard to which it was attached.

49.     In actuality, however, the equipment safety checklist had not been completed or had gone missing during the shifts of several other ASMs during the month of December 2021 when Plaintiff was either not the opening manager or not working at all.  Nevertheless, on January 24, 2021, Plaintiff was the only one written up again—and this time fired—for "failing to follow proper procedures with regards to the Store Readiness Checklist."  This was all based on the missing December 9 equipment safety checklist.

50.     Notably, equipment safety checklists are rarely, if ever, independently reviewed or relied upon by anyone within Home Depot after their initial use to complete the Store Readiness Checklist.  In fact, in the 16 and a half years Plaintiff worked at Home Depot, he had never seen or heard of any employee being written up for losing an equipment safety checklist.  While failing to timely submit a Store Readiness Checklist could be grounds for discipline, misplacing an

MACKANESS & IDETA, LLP
3702 4TH AVE.
SAN DIEGO, CA 92103

- 12 -

1    equipment safety checklist had never been grounds for a write-up, let alone termination—and
2    particularly after 16 and a half years of service to the company.

3        51.    Not only was it not company practice to write employees up for a missing equipment
4    safety checklist, but Plaintiff learned he was the *only* employee disciplined for this, despite the fact
5    that there were other ASMs who had either not completed or misplaced the checklist in December.
6    In other words, Ms. Blanchard once again selectively enforced a "policy" against Plaintiff and not
7    his younger counterparts. Moreover, to the extent losing equipment safety checklists was becoming
8    a greater, store-wide problem, this would have been the managerial responsibility of the Operations
9    ASM, or even Ms. Blanchard. There was simply no basis for laying blame solely at Plaintiff's feet.

10       52.    Thus, the fact that only Plaintiff was singled out and disciplined for this "infraction"
11   is further evidence that Plaintiff was being targeted and treated disparately as a basis to wrongfully
12   terminate him.

13   **Defendant Terminates Plaintiff But Refuses to Pay Out Plaintiff's Earned Vacation Time.**

14       53.    On Monday, January 24, 2022, Plaintiff was brought into the store and terminated,
15   based on the disparate treatment he had received in the months prior.

16       54.    Notably, *only two weeks prior to Plaintiff's termination*, Home Depot changed its
17   entire management structure. Specifically, like all Home Depot stores, Ms. Blanchard hired three
18   new assistant managers, all of whom were 15 to 20 years younger than Plaintiff, and all of whom
19   were paid as hourly, non-exempt employees at a rate of $22-23 per hour—*approximately half of*
20   *Plaintiff's salary*. Not only were these new managers paid on an hourly basis, but on information
21   and belief, the amount of overtime they were permitted to work was capped at five (5) hours per
22   week.

23       55.    Also, opportunistically, Defendant terminated Plaintiff just one month prior to
24   Home Depot's fiscal yearend on February 28, thereby eliminating Plaintiff from the 2021 bonus
25   pool. Additionally, by terminating Plaintiff immediately prior to February 28, 2022, Defendant
26   cancelled Plaintiff's right to receive 54 restricted shares of Home Depot's stock, valued at nearly
27   $20,000.

28

MACKANESS & IDETA, LLP
3702 4th AVE.
SAN DIEGO, CA 92103

56.   If this were not egregious enough, Defendant knowingly violated California Labor Code section 201 by failing to pay Plaintiff his final wages on the date of his termination. When Plaintiff finally did pay Plaintiff two days later on January 26, 2022, Plaintiff was not paid out the full amount of his accrued vacation time. Specifically, although Plaintiff's January 28, 2022 wage statement reflects that Plaintiff had 264 available vacation hours as of January 23, 2022 (the day before his termination), Plaintiff was only paid 196.93 vacation hours on January 26, 2022. Thus, Defendant shorted Plaintiff more than 67.7 hours of vacation pay.

57.   As a result of Defendant's numerous Labor Code violations, as well as Defendant's disparate treatment of Plaintiff based on his age and disability, and ultimate wrongful termination, Plaintiff is entitled to substantial damages, including general damages, lost wages, unpaid wages, penalties, liquidated damages, attorney's fees, and costs in an amount according to proof at trial. In addition, Defendant's actions were fraudulent, oppressive, and malicious, thereby justifying an award of punitive damages in an amount according to proof.

58.   Before filing this action, Plaintiff exhausted his administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right to-sue letter.

## FIRST CAUSE OF ACTION

**(Failure to Pay Overtime Compensation in Violation of Labor Code §§ 510, 1194, and 1198)**

59.   Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

60.   California Labor Code section 510 and IWC Wage Order 7-2001 provide that all work performed by a non-exempt employee in excess of eight (8) hours in a workday, or in excess of forty (40) hours in any workweek, must be compensated at a rate of one and one-half (1.5) times the employee's regular rate of pay. Any work in excess of twelve (12) hours in a single workday must be compensated at the rate of no less than twice an employee's regular rate of pay. And, any work in excess of eight (8) hours on the seventh (7th) day of a workweek must be compensated at a rate of no less than twice the employee's regular rate of pay.

61.   Labor Code section 1194(a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime

MACKANESS & IDETA, LLP
3703 4TH AVE.
SAN DIEGO, CA 92103

- 14 -

COMPLAINT

compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

62.    Labor Code section 1198 provides: "The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees.  The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

63.    Throughout his employment, Defendant intentionally and knowingly misclassified Plaintiff as an "exempt" employee, without regard to the true expectations, requirements, and duties of Plaintiff's position.  Plaintiff was primarily engaged in the performance of the same non-exempt tasks as Defendant's other non-exempt employees.  Defendant's improper classification of Plaintiff as an exempt employee was done in an illegal attempt to avoid paying Plaintiff overtime wages and other benefits in violation of the California Labor Code and applicable IWC Wage Order.

64.    Pursuant to IWC Wage Order 7-2001, for Plaintiff to properly be exempt under the Executive Exemption, it is Defendant's burden to establish that *all* of the following is true with regard to Plaintiff:

(a) His duties and responsibilities involve the management of the enterprise or of a customarily recognized department or subdivision thereof;

(b) He customarily and regularly directs the work of two or more other employees therein;

(c) He has the authority to hire or fire other employees, or his recommendations as to the hiring, firing, advancement, promotion, or other change of status of other employees is given particular weight;

(d) He customarily and regularly exercises discretion and independent judgment; and

(e) He is primarily engaged in duties which meet the test of the exemption.

65.    During his employment, but particularly beginning in September 2019, Plaintiff did not meet all of the requirements for treatment as an "executive" under the Executive Exemption

MACKANESS & IDETA, LLP
3702 1st Ave.
San Diego, CA 92103

- 15 -

1  per the Wage Order.  Nor did Plaintiff meet the requirements for the Administrative Exemption or

2  Professional Exemption under the Wage Order.  As such, Plaintiff was improperly misclassified as

3  a salaried, exempt employee.

4        66.     Throughout his employment, Defendant required Plaintiff to work in excess of eight

5  (8) hours in a workday and/or in excess of forty (40) hours in a workweek without compensating

6  him at a rate of one and one-half (1.5) times his regular rate of pay.  Upon information and belief,

7  Defendant also failed to properly compensate Plaintiff for hours worked in excess of twelve (12)

8  hours in one (1) day, or eight (8) hours on the seventh (7th) day of a workweek.

9        67.     As a result, Defendants failed to pay Plaintiff his earned overtime and double time

10  wages.

11        68.     Defendant knew or should have known Plaintiff was undercompensated as a result

12  of these practices.

13        69.     Based on these violations, Plaintiff is entitled to recover from Defendant his unpaid

14  wages, statutory penalties, liquidated damages, reasonable attorney's fees and costs in this action,

15  and pre-judgment and post-judgment interest.

16  **SECOND CAUSE OF ACTION**

17  **(Failure to Provide Meal Breaks in Violation of Labor Code §§ 512 and 226.7)**

18        70.     Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

19        71.     Pursuant to Labor Code section 512, no employer shall employ an employee for a

20  work period of more than five (5) hours without providing a meal break of not less than thirty (30)

21  minutes in which the employee is relieved of all of his or her duties, except that when a work period

22  of not more than six (6) hours will complete the day's work, the meal period may be waived by

23  mutual consent of the employer and employee.

24        72.     During his employment, Plaintiff was improperly misclassified as a salaried, exempt

25  employee.

26        73.     Due to Defendant's policies, practices, requirements, and staffing, Defendant failed

27  to provide Plaintiff timely and uninterrupted first meal periods of not less than thirty (30) minutes

28  within the first five hours of a shift.  Plaintiff was often required to completely forego meal periods,

MACKANESS & IDETA, LLP
3702 4th AVE.
SAN DIEGO, CA 92103

MACKANESS & IDETA, LLP
3702 1ST AVE.
SAN DIEGO, CA 92103

1    take shortened or interrupted meal periods, and/or commence his meal periods into and beyond the

2    sixth hour of her shifts.

3          74.     In addition, on information and belief, Plaintiff was required to carry a work-related

4    cell phone during meal and rest periods, and/or was required to remain available. Meal breaks were

5    frequently interrupted as a consequence.

6          75.     On information and belief, Plaintiff was not paid one hour of pay at his regular rate

7    for each day that a meal period was not lawfully provided.

8          76.     Moreover, Plaintiff was not provided a second meal period on days in which his

9    shifts exceeded ten hours, nor was he provided premium wages in lieu of a second meal period. On

10   information and belief, Plaintiff did not waive his rights to a second meal period on shifts in excess

11   of ten hours.

12         77.     Pursuant to Labor Code section 226.7, Plaintiff is entitled to recover one (1) hour of

13   premium pay for each day in which a meal period violation occurred, plus interest and penalties

14   thereon, attorney's fees, and costs, under Labor Code sections 218.6, 226.7, 512, and the applicable

15   IWC Wage Orders.

16                              **THIRD CAUSE OF ACTION**

17   **(Failure to Provide Rest Periods in Violation of Labor Code § 226.7 & IWC Order 7-2001)**

18         78.     Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

19         79.     Pursuant to the applicable IWC Order 7-2001, Defendant was required to authorize

20   and permit Plaintiff to take a net 10-minute paid rest period for every four (4) hours worked or

21   major fraction thereof. Insofar as it is practicable, such rest periods were required to be in the

22   middle of the four-hour work period. Authorized rest period time is counted as hours worked, for

23   which there are no deductions from wages.

24         80.     Labor Code section 226.7(a) prohibits an employer from requiring any employee to

25   work during a rest period mandated by a Wage Order. Under Labor Code section 226.7(b), where

26   an employer fails to authorize or permit a rest period, it shall pay the employee one hour of pay at

27   the employee's regular rate of pay for each workday that the rest period is not provided.

28

MACKANESS & IDETA, LLP
3702 4ᵀᴴ AVE.
SAN DIEGO, CA 92103

81.    Throughout his employment, Plaintiff was not provided the opportunity to take rest breaks as required by law.  In addition, on information and belief, Plaintiff was required to carry a work-related cell phone during meal and rest periods, and/or was required to remain available.  Rest periods were frequently interrupted as a consequence.

82.    Defendant willfully violated Labor Code section 226.7 and IWC Order 7-2001 by failing to schedule and permit uninterrupted, paid rest periods, and by failing to provide one hour of additional wages at Plaintiff's regular rate of compensation for each workday that the rest periods were not permitted.

83.    As a result of Defendant's acts, Plaintiff is entitled under the applicable Wage Order and Labor Code sections 226.7(c) and 1194(a) to recover one additional hour of pay at his regular rate of compensation for each workday that a rest person was not provided, plus interest thereon, reasonable attorney's fees, and costs of suit.

## FOURTH CAUSE OF ACTION

**(Failure to Pay Wages Owed Upon Separation of Employment in Violation of Labor Code §§ 201, 203, & 227.3)**

84.    Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

85.    Plaintiff was wrongfully terminated from his position on January 24, 2022.

86.    Labor Code section 201 required Defendant to pay Plaintiff all wages due him immediately upon separation of employment, including all accrued, unpaid vacation hours.

87.    Specifically, Labor Code section 227.3 states that where an employer's employment contract or policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such employer policy respecting eligibility or time served.  An employer may not require the forfeiture of vested vacation time upon termination.

88.    Pursuant to Labor Code section 203, if an employer fails to timely pay final wages, the employer must, as a penalty, pay the subject employee's wages until the back wages are paid in full or an action is commenced.  The penalty cannot exceed 30 days of wages.

MACKANESS & IDETA, LLP
3702 4TH AVE.
SAN DIEGO, CA 92103

89.     Defendant knowingly violated California Labor Code section 201 by failing to pay Plaintiff his final wages on the date of his termination. Moreover, when Plaintiff finally did pay Plaintiff two days later, on January 26, 2022, Defendant knowingly violated Labor Code sections 201 and 227.3 by not paying Plaintiff the full amount of his accrued vacation time. Specifically, although Plaintiff's January 28, 2022 wage statement reflects Plaintiff had 264 available vacation hours as of January 23, 2022 (the day before his termination), Plaintiff was only paid 196.93 vacation hours on January 26, 2022. Thus, Defendant shorted Plaintiff 67.7 hours of vacation pay.

90.     More than thirty (30) days have passed since Plaintiff has left Defendant's employ, and Plaintiff has not received proper payment of his final wages pursuant to Labor Code section 203.

91.     Accordingly, Plaintiff is entitled to 30 days' wages as a penalty under Labor Code section 203, together with interest thereon, and attorney's fees and costs.

## FIFTH CAUSE OF ACTION

### (Failure to Provide Accurate, Itemized Wage Statements in Violation of Labor Code § 226)

92.     Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

93.     Labor Code section 226 requires employers to employees with accurate, itemized wage statements showing, among other things: "(1) gross wages earned, (2) total hours worked by the employee…, (3) the number of piece rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions…, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the legal entity that is the employer…, (8) the name and address of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee…."

94.     During Plaintiff's employment, Defendant willfully and knowingly violated Labor Code section 226 by failing to provide Plaintiff with accurate, itemized wage statements properly stating all hours worked, including reporting time and overtime, all hours worked off the clock, and premium wages owed, among other required information.

95.     In addition, Defendant failed to keep accurate records depicting the above required information.

96.     By failing to keep accurate records or provide accurate wage statements as required by Labor Code section 226, Defendant has injured Plaintiff by rendering it confusing and difficult to calculate the wages and losses (including interest and penalties thereon) due him.

97.     Pursuant to Labor Code section 226, Plaintiff is entitled to recover up to a maximum of $4,000, along with an award of costs and reasonable attorney's fees.

## SIXTH CAUSE OF ACTION

### (Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*)

98.     Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

99.     Defendant's policies, practices, and actions as alleged herein constitute unlawful business acts and practices in violation of California Business and Professions Code section 17200, *et seq.*

100.    A violation of Section 17200, *et seq.*, may be predicated on the violation of any state or federal law.

101.    Defendant has violated the California Labor Code and applicable IWC Wage Order as detailed herein.

102.    Plaintiff has been personally aggrieved by Defendant's unlawful and unfair business acts and practices alleged herein by the loss of money and/or property.

103.    Plaintiff is entitled to equitable relief pursuant to California Business & Professions Code section 17203 as may be necessary to remedy and prevent the conduct held to constitute unfair competition, including restitution of wages wrongfully withheld, along with an award of interest, costs, and attorney's fees pursuant to California Code of Civil Procedure section 1021.5.

## SEVENTH CAUSE OF ACTION

### (Age Discrimination in Violation of FEHA, Gov't Code § 12940, *et seq.*)

104.    Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

105.    At all times relevant hereto, FEHA was in full force and effect and was binding on Defendant, as Defendant regularly employs five (5) or more persons.  FEHA provides that it is unlawful for an employer to discharge a person from employment or to discriminate against the

MACKANESS & IDETA, LLP
3702 4th AVE.
SAN DIEGO, CA 92103

1   employee in compensation or as to the terms, conditions, or privileges of employment based on

2   age, as stated in Government Code section 12940(a).

3       106.   At all relevant times, Plaintiff was an employee over the age of 40 and was a member

4   of a protected class under Section 12940(a).

5       107.   Plaintiff is informed and believes, and based thereon alleges, that his age was a

6   motivating factor in Defendant's decision to terminate Plaintiff's employment, in violation of

7   section 12940(a). In violation of section 12940, Defendant, acting through its store manager Denise

8   Blanchard, wrongfully discriminated against Plaintiff on the basis of his age, by: (a) demoting

9   Plaintiff to Merchandising ASM under the false guise that she simply wanted to give another

10  (younger and lower-paid) employee a "chance"; (b) issuing Plaintiff write-ups in a disparate and

11  unequal manner compared to Plaintiff's co-workers (including other assistant store managers), and

12  in a manner inconsistent with Home Depot's prior practices and course of conduct, in order to

13  manufacture seemingly "legitimate" grounds to terminate Plaintiff; and (c) ultimately terminating

14  Plaintiff's employment after his faithful and excellent service of 16.5 years.  On information and

15  belief, Defendant embarked upon this wrongful campaign to terminate Plaintiff because his age and

16  tenure with Defendant rendered him one of the most highly paid assistant store managers in any of

17  San Diego County's Home Depot locations, and because Defendant wished to replace him with

18  younger employees whom Defendant could pay nearly half of Plaintiff's salary to perform the same

19  tasks.

20      108.   As a direct and proximate result of Defendant's conduct, Plaintiff has sustained and

21  continues to sustain substantial losses in past, present, and future earnings, career opportunities,

22  bonuses, and other employment benefits, including but not limited to grants of restricted stock, in

23  amounts to be proven at trial.  Plaintiff's damages include all consequential, general, and special

24  economic damages in amounts to be proven at trial.

25      109.   As a further proximate result of Defendant's discriminatory conduct, Plaintiff has

26  suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and

27  anguish, all to his damage in a sum according to proof.

28

MACKANESS & IBETA, LLP
3702 4ᵗʰ AVE.
SAN DIEGO, CA 92103

- 21 -

COMPLAINT

110.     As a further proximate result of Defendant's discriminatory conduct, Plaintiff has been forced to hire attorneys to prosecute his claims, and has incurred and is expected to continue to incur attorney's fees and costs in connection therewith.  Plaintiff is entitled to recover attorney's fees and costs under Government Code section 12965(b).

111.     Defendant's conduct, as alleged herein, was oppressive, malicious, and despicable, and was done in wanton disregard for Plaintiff's rights and the duties owed by Defendant.  Plaintiff is therefore entitled to an award of punitive damages against Defendant in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

**(Failure to Engage in Interactive Process in Violation of California Gov. Code § 12940, *et seq.*)**

112.     Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

113.     Government Code section 12940(n) provides that it is unlawful for an employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations, if any.

114.     At all relevant times, Plaintiff suffered from Type-1 diabetes, a physical disability under Government Code section 12926.1(c).

115.     Despite being aware of Plaintiff's disability, Defendant failed to engage in a timely, good faith, interactive process with Plaintiff to determine effective reasonable accommodations for Plaintiff's known disability.  Quite the contrary, Defendant's store manager, Denise Blanchard, actively prevented Plaintiff from having any food on the store floor in order to control his glucose levels while working.  Thus, Plaintiff was forced to leave the store floor for these unanticipated, but medically necessary snacks, thereby leaving a gap in coverage, particularly during the COVID-19 pandemic where there was already a staff shortage.

116.     Plaintiff is informed and believes, and based thereon alleges, that his disability was a motivating factor in Defendant's decision to terminate Plaintiff's employment, in violation of section 12940(a). On information and belief, Ms. Blanchard took exception to Plaintiff's disability, which was a substantial factor in her decision to treat Plaintiff differently from his co-workers, and, ultimately, to terminate him.

COMPLAINT

MACKANESS & IDETA, LLP
3792 1st AVE.
SAN DIEGO, CA 92103

117.   As a direct and proximate result of Defendant's conduct, Plaintiff has sustained and continues to sustain substantial losses in past, present, and future earnings, career opportunities, bonuses, and other employment benefits, including but not limited to grants of restricted stock, in amounts to be proven at trial.  Plaintiff's damages include all consequential, general, and special economic damages in amounts to be proven at trial.

118.   As a further proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

119.   As a further proximate result of Defendant's conduct, Plaintiff has been forced to hire attorneys to prosecute his claims, and has incurred and is expected to continue to incur attorney's fees and costs in connection therewith.  Plaintiff is entitled to recover attorney's fees and costs under Government Code section 12965(b).

120.   On information and belief, Defendant had in place policies and procedures that specifically prohibited discrimination, retaliation, and harassment based on a disability, and which required Defendant's managers and employees to prevent disability discrimination.  Defendant's manager, namely, Ms. Blanchard, was aware of these policies and procedures prohibiting disability discrimination.  However, she chose to consciously and willfully ignore and refuse to employ said policies and procedures with respect to Plaintiff and therefore, Defendant's outrageous conduct was fraudulent, malicious, oppressive, and was done in wanton disregard for the Plaintiff's rights.  Plaintiff should, therefore, be awarded exemplary and punitive damages against Defendant in an amount appropriate to punish Defendant and deter others from engaging in such conduct.

## NINTH CAUSE OF ACTION

### (Disability Discrimination in Violation of Gov. Code § 12940, *et seq.*)

121.   Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

122.   California Government Code section 12940(a) requires an employer to refrain from discriminating against any employee on the basis of disability.

123.   Defendant engaged in unlawful employment practices in violation of the FEHA by discriminating against Plaintiff on the basis of his disability, failing to engage in the interactive

1   process to determine if Plaintiff could be given a reasonable accommodation, and failing to provide

2   Plaintiff with a reasonable accommodation.

3       124.   Plaintiff is informed and believes, and based thereon alleges, that his disability was

4   a motivating factor in Defendant's decision to terminate Plaintiff's employment, in violation of

5   section 12940(a). On information and belief, Ms. Blanchard took exception to Plaintiff's disability,

6   which was a substantial factor in her decision to treat Plaintiff differently from his co-workers, and,

7   ultimately, to terminate him.

8       125.   As a proximate result of the aforesaid acts of Defendant, Plaintiff has suffered

9   actual, consequential, and incidental financial losses, including without limitation, loss of salary

10  and benefits, and the intangible loss of employment related opportunities in his field and damage

11  to his professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims

12  such amounts as damages pursuant to California Civil Code section 3287 and/or section 3288

13  and/or any other provision of law providing for prejudgment interest.

14      126.   As a proximate result of the wrongful acts of Defendant, Plaintiff has suffered and

15  continues to suffer emotional distress, humiliation, mental anguish, embarrassment, and loss of

16  sleep. Plaintiff is informed and believes, and thereupon alleges, that he will continue to experience

17  said physical and emotional suffering for a period in the future not presently ascertainable, all in an

18  amount subject to proof at the time of trial.

19      127.   As a proximate result of the wrongful acts of Defendant, Plaintiff has been forced

20  to hire attorneys to prosecute his claims herein, and has incurred and is expected to continue to

21  incur attorney's fees and costs in connection therewith. Plaintiff is entitled to recover attorney's

22  fees and costs under section 12965(b).

23      128.   On information and belief, Defendant had in place policies and procedures that

24  specifically prohibited discrimination, retaliation, and harassment based on a disability, and which

25  required Defendant's managers and employees to prevent disability discrimination. Defendant's

26  manager, namely, Ms. Blanchard, was aware of these policies and procedures prohibiting disability

27  discrimination. However, she chose to consciously and willfully ignore and refuse to employ said

28  policies and procedures with respect to Plaintiff and therefore, Defendant's outrageous conduct was

MACKANESS & IDETA, LLP
3702 1ᵗʰ AVE.
SAN DIEGO, CA 92103

COMPLAINT

fraudulent, malicious, oppressive, and was done in wanton disregard for the Plaintiff's rights. Plaintiff should, therefore, be awarded exemplary and punitive damages against Defendant in an amount appropriate to punish Defendant and deter others from engaging in such conduct.

## TENTH CAUSE OF ACTION

### (Failure to Prevent Discrimination in Violation of FEHA, Gov't Code § 12940, *et seq.*)

129.    Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

130.    At all times mentioned herein, California Government Code section 12940, *et seq.*, including but not limited to sections 12940(j) and (k), were in full force and effect and were binding upon Defendant.  These sections impose on an employer a duty to take immediate and appropriate corrective action to end discrimination, and to take all reasonable steps necessary to prevent discrimination from occurring in the workplace, among other things.

131.    Defendant breached its statutory duties to Plaintiff under sections 12940(j) and (k) by failing to take immediate and appropriate corrective action to end the discrimination he was experiencing, and by failing to take any reasonable steps necessary to prevent the discrimination experienced by Plaintiff, ultimately resulting in his wrongful termination.

132.    As a direct and proximate result of Defendant's conduct, Plaintiff has sustained and continues to sustain substantial losses in past, present, and future earnings, career opportunities, bonuses, and other employment benefits, including but not limited to grants of restricted stock, in amounts to be proven at trial.  Plaintiff's damages include all consequential, general, and special economic damages in amounts to be proven at trial.

133.    As a further proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

134.    As a further proximate result of Defendant's discriminatory conduct, Plaintiff has been forced to hire attorneys to prosecute his claims, and has incurred and is expected to continue to incur attorney's fees and costs in connection therewith.  Plaintiff is entitled to recover attorney's fees and costs under Government Code section 12965(b).

MACKANESS & IDETA, LLP
3702 4th AVE.
SAN DIEGO, CA 92103

135.   Defendant's conduct, as alleged herein, was oppressive, malicious, and despicable, and was done in wanton disregard for Plaintiff's rights and the duties owed by Defendant.  Plaintiff is therefore entitled to an award of punitive damages against Defendant in an amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

136.   Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

137.   At all relevant times, Ms. Blanchard acted within the course, scope, and authority of her employment with Defendant, and her actions were both ratified and sanctioned by Defendant. As Plaintiff's direct supervisor, Ms. Blanchard's conduct, as alleged herein, was outrageous and carried out intentionally or with a reckless disregard for the probability of causing Plaintiff to suffer emotional distress.  This outrageous conduct includes, among other egregious acts described herein, Ms. Blanchard's disparate treatment and wrongful termination of Plaintiff.

138.   Defendant's conduct was either intended to cause Plaintiff severe emotional distress, or Defendant acted with reckless disregard of the probability that Plaintiff would suffer emotional and physical distress.

139.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, severe emotional distress, including anxiety, stress, nightmares, humiliation, mental anguish, embarrassment, and the manifestation of physical symptoms, including hives. Plaintiff is informed and believes, and thereupon alleges, that he will continue to experience said physical and emotional suffering for a period not presently ascertainable, all in an amount subject to proof at the time of trial.

140.   Defendant's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

141.   Moreover, Defendant acted with a conscious disregard of Plaintiff's rights and with the intent to vex, injure, and annoy Plaintiff.  Such acts constitute oppression, fraud, or malice under California Civil Code section 3294, entitling Plaintiff to punitive damages against Defendant according to proof at trial.

COMPLAINT

MACKANESS & IDETA, LLP
3702 1ST AVE.
SAN DIEGO, CA 92103

## TWELFTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Gov. Code § 12940, *et seq.*)

142.    Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

143.    At all times herein mentioned, FEHA was in full force and effect and was binding on Defendant.   FEHA provides that it is unlawful for an employer to discharge a person from employment based on age or disability, as stated in Government Code section 12940(a).

144.    Defendant terminated Plaintiff in violation of FEHA.

145.    As a proximate result of the aforesaid acts of Defendant, Plaintiff has suffered actual, consequential, and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages pursuant to California Civil Code section 3287 and/or section 3288 and/or any other provision of law providing for prejudgment interest.

146.    As a proximate result of the wrongful acts of Defendant, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish, embarrassment, and loss of sleep.  Plaintiff is informed and believes, and thereupon alleges, that he will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

147.    As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to hire attorneys to prosecute his claims herein, and has incurred and is expected to continue to incur attorney's fees and costs in connection therewith.  Plaintiff is entitled to recover attorney's fees and costs under section 12965(b).

148.    Defendant's conduct, as alleged herein, was oppressive, malicious, and despicable, and was done in wanton disregard for Plaintiff's rights and the duties owed by Defendant.  Plaintiff is therefore entitled to an award of punitive damages against Defendant in an amount to be proven at trial.

**THIRTEENTH CAUSE OF ACTION**

**(Wrongful Termination in Violation of Public Policy)**

149.   Plaintiff realleges and reasserts the foregoing paragraphs as if fully set forth herein.

150.   At all times mentioned, the public policy of the State of California, as codified, expressed and mandated in California Government Code section 12940, is to prohibit employers from discriminating, harassing, and retaliating against any individual on the basis of age or disability.  This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large.   Accordingly, the actions of Defendant in demoting Plaintiff, subjecting Plaintiff to disparate treatment, and terminating Plaintiff on the grounds alleged and described herein were wrongful and in contravention of the express public policy of the State of California, to wit, the policy set forth in California Government Code section 12940, *et seq.*, and the laws and regulations promulgated thereunder.

151.   As a proximate result of the aforesaid acts of Defendant, Plaintiff has suffered actual, consequential, and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment related opportunities in his field and damage to her professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages pursuant to California Civil Code section 3287 and/or section 3288 and/or any other provision of law providing for prejudgment interest.

152.   As a proximate result of the wrongful acts of Defendant, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish, embarrassment, and loss of sleep.  Plaintiff is informed and believes, and thereupon alleges, that he will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

153.   Defendant's conduct, as alleged herein, was oppressive, malicious, and despicable, and was done in wanton disregard for Plaintiff's rights and the duties owed by Defendant.  Plaintiff is therefore entitled to an award of punitive damages against Defendant in an amount to be proven at trial.

MACKANESS & IDETA, LLP
3702 4TH AVE.
SAN DIEGO, CA 92103

## DEMAND FOR JURY

Plaintiff requests a jury trial on all causes of action to which she is entitled a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as to Defendant as follows:

A.  For general damages in an amount within the jurisdictional limits of this Court;

B.  For compensatory damages and loss of earnings, according to proof;

C.  For statutory penalties and liquidated damages;

D.  For prejudgment interest, according to proof;

E.  For punitive and exemplary damages, according to proof;

F.  For attorney's fees and costs of suit incurred herein; and

G.  For such other and further relief as the Court may deem just and proper.

DATED: April 29, 2022

Submitted by,

MACKANESS & IDETA, LLP

ERIK M. IDETA, ESQ.

*Attorneys for Plaintiff*

MACKANESS & IDETA, LLP
3702 1st Ave.
San Diego, CA 92103

- 29 -